UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
MEDORA CLAI READING,

Case No.

               Plaintiff,

**COMPLAINT**

   - against -

JURY TRIAL DEMANDED

SOUTHWEST AIRLINES CO. d/b/a SOUTHWEST
AIRLINES, JANE DOES 1 & 2, and JOHN DOES 1 & 2,

               Defendants.
-------------------------------------------------------------------X

     MEDORA CLAI READING, the plaintiff herein, by and through her attorney,

KRISTINA S. HEUSER, P.C., hereby complains of the above-named defendants as follows:

### INTRODUCTION

1. In this age of COVID-19, restrictions have been put in place by government and

   private corporations purportedly aimed at reducing the spread of the virus. Putting

   aside the discussion of whether these measures are justifiable intrusions on civil

   liberty since, for now, no state actor is a party to this action, there is no doubt that

   these restrictions cannot and do not override the protections for disabled persons

   codified by the Air Carrier Access Act and the New York State Human Rights Law.

   Defendants have ignored their obligations under the ACAA to plaintiff's detriment,

   and plaintiff brings this action to redress the harm done to her by defendants as

   described in detail hereinbelow.

### JURISDICTION AND VENUE

2. This court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 and over the

   pendent state law claims pursuant to 28 U.S.C. §1367.

3.  Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. §1391(b)(1), (c)(2), and (d).

## PARTIES

4.  Plaintiff MEDORA CLAI READING (hereinafter referred to as "plaintiff") is a 68 year old woman who is also a person with a disability as defined by applicable federal law. Plaintiff is a United States citizen and a resident of the State of Florida.

5.  Defendant SOUTHWEST AIRLINES CO. d/b/a SOUTHWEST AIRLINES (hereinafter "Southwest") is a national corporation based in Texas but registered with the New York Secretary of State. Southwest flies in and out of many airports throughout the United States, including Macarthur Airport in Islip, New York.

6.  Defendant JANE DOE 1 (hereinafter referred to as "the gate attendant") is an employee of Southwest who violated plaintiff's civil rights in the manner described hereinbelow.

7.  Defendant JOHN DOE 1 (hereinafter referred to as "the gate supervisor") is an employee of Southwest who violated plaintiff's civil rights in the manner described hereinbelow.

8.  Defendant JANE DOE 2 (hereinafter referred to as "the flight attendant") is an employee of Southwest who violated plaintiff's civil rights in the manner described hereinbelow.

9.  Defendant JOHN DOE 2 (hereinafter referred to as "the pilot") is an employee of Southwest who violated plaintiff's civil rights in the manner described hereinbelow.

**FACTUAL ALLEGATIONS**

10.  On or about January 7, 2021, plaintiff was traveling from Washington, DC to Palm Beach, Florida on Southwest.

11. Plaintiff purchased a ticket for herself.

12. At the time of her purchase, she advised the Southwest employee from whom she purchased the ticket over the telephone that she was in need of an accommodation because she has difficulty breathing due to a heart condition, severe hypoglycemia, claustrophobia, and is subject to fainting spells (particularly when her breathing is labored and/or she is placed in particularly anxiety-producing situations). She further advised the ticket agent that she is medically required to drink water continually.

13. In response, plaintiff was advised by the Southwest employee that although there was no exemption from the face covering requirement, plaintiff could be seated in the front of the plane, allowed to board the plane first, and once seated could remove her mask to eat and drink. Upon the advice of the agent, plaintiff paid an additional fee to obtain "early bird" status for early boarding.

14. Plaintiff accepted this arrangement and intended to drink water throughout the flight to compensate for her disabilities that are triggered by wearing a face covering.

15. Plaintiff and her travel companion timely arrived at the airport, and upon arriving at the gate, approached the desk. Plaintiff began to address a Southwest employee to advise that she (plaintiff) is a person with a disability in need of an accommodation.

16. The gate supervisor was standing nearby and must have overheard what plaintiff was saying. The gate supervisor immediately intervened and advised plaintiff that

Southwest "does not care" about her disabled status and no accommodation would be made, but that her ticket did indicate priority boarding.

17. Plaintiff then went to purchase a drink from an airport food and beverage kiosk to address her hypoglycemia because she felt her sugar level dropping.

18. Plaintiff then took her seat in the waiting area and awaited further boarding instructions.

19. When the boarding process began, plaintiff proceeded to board pursuant to the announced instructions. Plaintiff was stopped by the gate attendant and ordered to throw her drink away before boarding.

20. Plaintiff knew from having traveled previously that she should be allowed to bring a beverage purchased inside of the terminal onto the airplane, but rather than get into an argument at the gate and because plaintiff was already feeling weak, plaintiff complied with all of the gate attendant's instructions.

21. Plaintiff boarded the plane with her face covered so as to avoid conflict and confrontation.

22. Once on the plane, plaintiff asked the flight attendant whom for a bottle of water. Plaintiff was feeling faint.

23. The flight attendant pushed back against plaintiff's request, asking, "Why, do you need to take medication?" Plaintiff explained that she has a medical condition that requires her to remain hydrated and that she was not feeling well.

24. Plaintiff offered to show the flight attendant her medical exemption card, to which the flight attendant responded, "we don't care".

25. The flight attendant handed plaintiff the water but stated, "your face covering must remain in place at all times."

26. Plaintiff was feeling faint, anxious, and her breathing extremely labored by the time she arrived at her seat.

27. Plaintiff immediately sat down, then slipped her face covering beneath her chin and began to take sips of her water.

28. The flight attendant then returned to where plaintiff was seated and harshly reprimanded her, telling her to put her face covering back in place.

29. Plaintiff responded, "I am drinking the water you gave me." The flight attendant responded in a harsh tone saying, "No-you may take a sip of water, then you are to put your mask back in place, then you may take another sip of water, and you put your mask back in place."

30. Around this same time, an announcement was made over the loudspeaker directing that face coverings remain in place at all times *except when eating or drinking.*

31. This did not deter the flight attendant, however, who continued to hover angrily over plaintiff.

32. Feeling intimidated by the flight attendant's hostile behavior, plaintiff stopped drinking. This caused her physical state to worsen.

33. Plaintiff felt her nostrils closing and felt she was unable to breathe. She felt she needed to remove the mask and blow her nose but was afraid of being retaliated against by the flight attendant.

34. People seated around plaintiff on the plane were aware of the confrontation and began to offer words of support to plaintiff. People also told plaintiff that the flight attendant

was focused on her and was watching her every move. Plaintiff was unable to observe what was happening around her because she was on the verge of passing out.

35. Unable to cope with her covered face and lack of oxygen any longer, plaintiff once again pulled the mask beneath her chin and sipped her water.

36. The flight attendant immediately returned to plaintiff and yelled at her to put her mask back in place.

37. Plaintiff responded that she needed to sip her water. The flight attendant shouted at plaintiff, "You were talking!"

38. The flight attendant then made a phone call. The gate attendant and gate supervisor boarded the plane and headed straight for plaintiff.

39. The gate supervisor reminded plaintiff of Southwest's face covering policy. Plaintiff told the gate supervisor that she had the face covering in place at all times except when drinking and reminded the supervisor that she has medical conditions that require her to remain hydrated at all times.

40. This seemed to satisfy the gate supervisor, who then left the plane followed by the gate attendant.

41. A short time thereafter, plaintiff again placed her mask beneath her chin and resumed drinking her water.

42. The flight attendant again called the gate.

43. The gate attendant approached plaintiff and directed her to stand up and follow her. The gate attendant further advised, "You can leave your things. You are not going anywhere, just around the corner to talk."

44. The flight attendant then leaned over and spoke to the gate attendant. The gate attendant then turned to plaintiff and said, "Get your belongings. You are being removed from this flight."

45. Plaintiff was confused, shaking, crying, unable to breathe through her nose, hyperventilating, and could barely stand. Due to her physical state, she was unable to mount an argument.

46. Plaintiff and her travel companion were scrambled to retrieve their belongings.

47. The gate supervisor then approached and harshly said to plaintiff, "You are coming with me." Plaintiff felt as though she was being treated like a criminal.

48. While exiting, plaintiff observed that the cockpit door was open and concluded that the pilot had observed or at least listened to the entire interaction. The pilot, who did not have his face covered, laughed mockingly as plaintiff exited the plane.

49. Due to prior hip surgery and feeling faint and weak due to the lack of oxygen and stress of the entire ordeal, plaintiff was unable to keep up with the pace of the gate supervisor. Plaintiff told him she was unable to keep up while on the gangway, but the gate supervisor did not respond.

50. Upon reaching the inside of the airport, plaintiff was choking back tears, was unable to breathe through her nose, and was still feeling faint and on the verge of passing out.

51. Plaintiff asked the gate supervisor what she was supposed to do. The gate supervisor told her to get a hotel in the area. Plaintiff reminded the gate supervisor that all of the hotels were shut down (due to the protest the previous day). The gate supervisor did not respond.

52. The gate supervisor presented plaintiff with a document and directed her to sign it. Plaintiff asked what it was. The gate supervisor responded, "this is a statement that you're being removed from the flight because you were noncompliant."

53. Plaintiff responded that she would not sign the document because her refusal to sign that paper was the very first instance that day that she was/would be noncompliant. Plaintiff had complied with the face covering policy to her own detriment because she was forced to, and she reminded the gate supervisor of this fact.

54. The gate supervisor then asked plaintiff if she had luggage on the plane. Plaintiff advised that she did. The gate supervisor asked plaintiff for her luggage ticket and said he would attempt to retrieve plaintiff's luggage from the plane.

55. The gate supervisor never retrieved plaintiff's luggage from the plane and never returned her luggage ticket to her.

56. The gate supervisor then wrote on the back of plaintiff's boarding pass that she was entitled to a refund of the full ticket price. To date, that refund has not been issued.

57. Plaintiff began to walk away and nearly collapsed. A group of Metro Police officers were standing nearby and some quickly intervened to help keep plaintiff upright.

58. At this point plaintiff could not contain her emotions any longer and began to cry as a result of the abuse she had just endured. The police asked plaintiff what happened, and she told them. The police remarked that this was "happening far too often" and "it is usually Southwest".

59. The police assisted plaintiff to a chair and gave her some water.

60. This was when plaintiff was finally was able to remove her mask. As soon as she did, blood came gushing out of her nose.

61. When plaintiff was finally able to stand up – approximately 45 minutes later – the police escorted her to the Jet Blue desk to aid her in making arrangements to return to her home in Florida.

62. The Jet Blue agent was kind in assisting plaintiff. Plaintiff again began to feel faint again and began to cry at the ordeal she had just been subjected to.

**AS AND FOR A FIRST CAUSE OF ACTION (against defendant Southwest Airlines)**
VIOLATION OF THE AIR CARRIER ACCESS ACT

63. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 62 above as though fully set forth herein.

64. Plaintiff is a disabled person within the meaning of the Americans with Disabilities Act.

65. Southwest's face covering policy, either as written and/or as applied to plaintiff, does not comply with the Air Carrier Access Act.

66. Specifically, Southwest failed to accommodate plaintiff and deprived her of access to air travel aboard their aircraft due solely to her disability and need for accommodation.

67. Plaintiff has exhausted her administrative remedies.

**AS AND FOR A SECOND CAUSE OF ACTION (against defendant Southwest Airlines)**
SECTION 504 OF THE REHABILITATION ACT

68. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 66 above as though fully set forth herein.

69. Upon information and belief, Southwest is a recipient of federal funding.

70. Plaintiff is an individual with a disability within the meaning of the Act.

71. Defendant has discriminated against plaintiff due to her disability, ejected her from and denied her access to travel on its airline.

## AS AND FOR A THIRD CAUSE OF ACTION
### (against defendants Jane Does and John Does)
42 U.S.C. §§1985 & 1986 FOR CONSPIRACY TO VIOLATE CIVIL RIGHTS

72. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 70 above as though fully set forth herein.

73. The individually named defendants, and each of them, conspired together to deprive plaintiff of her civil rights (to wit: right to travel and right to equal protection) as described hereinabove.

74. Defendants acted in concert at all times relevant herein and committed overt acts as herein described in furtherance of their conspiracy to violate plaintiff's civil rights.

## AS AND FOR A FOURTH CAUSE OF ACTION (against all defendants)
VIOLATION OF NEW YORK STATE HUMAN RIGHTS LAW

75. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 73 above as though fully set forth herein.

76. All of the acts perpetrated by defendants against plaintiff as described herein, in addition to violating federal law, also violate New York State Executive Law §296.

## AS AND FOR A FIFTH CAUSE OF ACTION (against all defendants)
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

77. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 75 above as though fully set forth herein.

78. As a result of all of the acts perpetrated by defendants against plaintiff as described herein, plaintiff suffered grave emotional distress.

79. Specifically, plaintiff suffered hyperventilation, anxiety that resulted in a panic attack, loss of consciousness, and continues to suffer sleeplessness, anxiety, and deep sadness that may be characterized as depression.

80. Defendants' actions described herein were unconscionable and are not to be tolerated in a civilized society.

WHEREFORE, plaintiff respectfully requests that the Court grant her relief as follows:

(i)     Declaratory judgment declaring that Southwest Airlines and all airlines must grant passengers reasonable accommodations pursuant to the Air Carrier Access Act when the passenger asserts that he or she is unable to wear a face covering for medical reasons; and,

(ii)    Monetary damages of Ten Million Dollars; and,

(iii)   Attorney's fees and costs associated with this action; and,

(iv)    Such other and further relief as this Court may deem just and proper.


Dated: Locust Valley, New York
       January 18, 2022


                                    KRISTINA S. HEUSER, P.C.

                        By:     _____/S/_____
                                Kristina S. Heuser, Esq. (KH3612)
                                Post Office Box 672
                                Locust Valley, New York 11560
                                Tel. (516) 676-1565
                                Cell (516) 592-2927
                                E-mail: kheuser@heuserlawfirm.com